FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG 23  AM 7:50

LORETTA G. WHYTE
         CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GERALDINE M. JONES | CIVIL ACTION |
| VERSUS | NO. 04-1696 |
| JO ANNE BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION | SECTION "F" (3) |

## REPORT AND RECOMMENDATION

Before this Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having reviewed the motions, administrative record and applicable law, IT IS RECOMMENDED that the Court GRANT the defendant's motion, DENY plaintiff's motion and DISMISS the plaintiff's case WITH PREJUDICE for the following reasons.

### I. BACKGROUND

**A. Procedural History**

Plaintiff/claimant, Geraldine M. Jones ("Jones"), seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Act ("the Act") of the Social Security Administration Commissioner's final decision finding Plaintiff not disabled and therefore ineligible for Supplemental Security Income benefits under the Act. On August 14, 2002, Jones filed an application for Supplemental Security Income claiming that she became unable to work on April

1

1, 2000, due to right leg spasm and back pain caused by a bulging disc.[1]  Plaintiff alleged at the outset that her back/leg symptoms limit her ability to work because she is "unable to lift or pull anything heavy" and that bending, stooping down, crouching and sneezing cause pain.[2]  Her application for benefits was denied initially, noting that plaintiff's "discogenic/degenerative" back condition causes some pain, discomfort and weakness in the right leg but that it does not prevent the performance of plaintiff's past relevant work as a cashier, as it is usually performed across the country.[3]  Plaintiff filed a request for a hearing before an Administrative Law Judge.[4]

The hearing was conducted on December 10, 2003 before United States Administrative Law Judge ("ALJ") Gary L. Vanderhoof in New Orleans.[5]  Plaintiff appeared with counsel at the hearing.  In a written decision dated January 20, 2004, the ALJ found that Jones' "past relevant work as a cashier did not require the performance of work-related activities precluded by her residual functional capacity."[6]  On January 26, 2004, plaintiff sought review of the hearing

---

[1] *See* Application for Disability Insurance Benefits dated August 14, 2002 [Adm. Rec. 31-33]; Disability Report dated August 27, 2002 [Adm. Rec. 36-44].

[2] *Id.* [Adm. Rec. 37].

[3] *See* Initial Determination dated September 14, 2002 (finding the claimant does not qualify for benefits [Adm. Rec. 25-28]; Disability Determination and Transmittal [Adm. Rec. 24].

[4] *See* Request for Hearing By Administrative Law Judge dated October 7, 2002 [Adm. Rec. 29]; Transcript of Oral Hearing dated January 10, 2003 [Adm. Rec. 119-131].

[5] *See* Notice of Hearing dated December 8, 2003 [Adm. Rec. 32-35].

[6] *See* ALJ Vanderhoof's Decision dated January 20, 2004 (finding that the claimant has the residual functional capacity to lift 10 pounds frequently, 20 pounds occasionally and that she can stand and walk for up to 6 hours in an 8 hour day) [Adm. Rec. 17].

decision/order.[7]  On May 21, 2004, the decision of the ALJ was adopted as the final decision of the Commissioner by the Appeals Council on review.[8]  On June 21, 2004, plaintiff timely filed the captioned matter.  The matter has been fully briefed and is ripe for determination.

### B. Facts Evinced at the Administrative Hearing

Jones, a high school graduate with some vocational training in sales and marketing management, testified that she was born on June 19, 1953 and was fifty years old at the time of the hearing. (Adm. Rec. at 123).  She testified that she was single and without dependents, having last worked as a cashier for approximately fifteen years until her alleged disability began. (Adm. Rec. 123-124).

Plaintiff testified that she experiences intermittent "dull" pain in her back and leg.  She further testified that she is treated by doctors in Charity Hospital's orthopedic clinic and was also examined in the neurology clinic to determine if her back condition required surgery and "to follow up on [her] pain." (Adm. Rec. 125)  Plaintiff stated that her prescribed medications include Hydrocodone and Elavil and that her treating neurosurgeon planned to place her in occupational and physical therapy.  (Adm. Rec. 126)

Plaintiff testified that, on a typical day, she wakes up early and tries to get her chores done.  As far as housework, plaintiff stated that she can only do the dishes.  She cannot mop, sweep or perform any yard work because bending affects her back.  Jones testified that she has not slept in a bed in three years; instead, she sleeps on the chaise lounge.  On "a good day," she

---

[7]*See* Request for Review of Hearing Decision dated March 11, 2004 [Adm. Rec. 6];Correspondence of Matt Greenbaum dated January 26, 2004 and March 9, 2004 [Adm. Rec. 7-10].

[8]*See* Notice of Appeals Council Action dated April 21, 2004 [Adm. Rec. 3-5].

can walk three blocks without any problem and, if she exceeds three blocks, she feels back pain radiating down to her legs. (Adm. Rec. 129) Plaintiff testified that she can sit for as long as two hours. After that period of time, she must get up and walk around. Jones stated that she must lie down about three times a day during her housework.

Jones explained that she could not go back to her job as a cashier because, in addition to "cashiering," she performed the work of a stock clerk in her past jobs. Jones testified that she cannot pick up heavy items or do the kind of pushing and pulling that a stock clerk is required to do. Plaintiff further stated that she could not perform full time work as a cashier because her "legs get tired" and that causes the pain to return to her back. (Adm. Rec. 129-130)

### C. Medical History

Having reviewed the medical records in their entirety, this Court finds that the ALJ's summary is substantially correct. The plaintiff does not dispute the fact that ALJ Vanderhoof provides a thorough discussion of the medical findings. The memorandum portion of the plaintiff's motion merely states: (1) that an MRI taken in 2001 shows that she has a disc problem at L5-S1; and (2) a later imaging study reveals the same disc problem at L5-S1.[9] The ALJ's discussion of the medical evidence of the record is reiterated herein below.

> In August 2001 the claimant was seen with complaints of right leg pain, but left against medical advice before receiving any treatment (Exhibit 1F/7). X-rays revealed narrowing of the L5-S1 disc space (Exhibit 1F/5). Additional x-rays in October 2001 showed mild disc space narrowing at L5-S1 (Exhibit 2F/8). In may 2002 she complained of intermittent pain across the low back and cramping in the leg. She said the pain was aggravated by too much moving around, lifting,

---

[9]Plaintiff now argues that her right leg problems cause spasms from her hip to her feet, which sometimes cause her to fall and hurt herself. Plaintiff further contends that she attends therapy for right shoulder pain and "was told that [she has] rheumatoid arthritis." *See* Plaintiff's Motion for Summary Judgment at p. 2 of 2 [Rec. Doc. No. 12].

sweeping, and lying supine (Exhibit 2F/2). In October 2002 she was seen with complaints of left arm pain in addition to her back and leg pain (Exhibit 4F/4). Additional x-rays revealed mild to moderate degenerative disc disease and degenerative joint disease of the lumbosacral spine at L5-S1 (Exhibit 5F/9). An MRI in October 2003 revealed a disc bulge at L5-S1 (Exhibit 5F/3) These impairments have had more than a minimal effect on her ability to work.

The medical evidence indicates that the claimant has mild disc space narrowing at L5-S1 with associated right leg pain, impairments that are "severe" within the meaning of the Regulations but Not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. [T]he claimant does not have reflex or sensory loss accompanied by positive straight [leg] raising to comport with the severity contemplated by § 1.04A. The claimant has failed to establish that her impairments, even in combination, meet or equal the requirements of any listed impairment.[10]

### D. ALJ's Findings

The ALJ found that the plaintiff has not engaged in substantial gainful activity since the onset of disability (April 1, 2000) and that the aforesaid medical evidence establishes that she has impairments that are "severe" within the meaning of the Regulations. However the ALJ determined that Jones does not have an impairment or combination of impairments listed in or medically equal to one of those listed Appendix 1, Subpart P, Regulations No. 4. (Adm. Rec. 16-17).

The ALJ specifically found that the plaintiff does have pain causing functional limitations, but that her allegations of *disabling* limitations are not fully credited. (Adm. Rec. 17). In this regard, ALJ Vanderhoof explained:

> The claimant testified that she was unable to perform heavy lifting due to back and leg pain. She takes pain medications, muscle relaxants and medication to help her sleep. She does not complain of side effects. She testified that she sleeps on a chaise lounge because she cannot sleep on a bed. She is able to walk about

---

[10] ALJ Vanderhoof's Decision dated January 20, 2004 [Adm. Rec. 15-16].

5

three blocks according to her testimony. She testified that she lies down three times a day for 1 to 2 hours at a time. However, the medical record does not document that her medical condition requires such rest periods. She feels she cannot work on a full time basis due to leg pain. However, the only restriction place[d] [upon her activities] by her doctors was that she do no heavy lifting (Exhibit 4F/5). The state agency [medical source], after reviewing the medical record, concluded that the claimant retained the capacity to perform the requirements of light [level] work on a sustained basis (Exhibit 3F).[11]

Considering claimant's impairments and accompanying symptoms as well as functional limitations, the ALJ determined that Jones' past relevant work as a cashier did not require the performance of work-related activities exceeding light and sedentary level work requirements and thus concluded that the plaintiff is capable of performing her past relevant work as it is usually performed in the national economy. In summary, the ALJ found that Jones is not "disabled" within the meaning of the Act at any time through the date of the decision (January 20, 2004). (Adm. Rec. 16, 17)

Plaintiff seeks judicial review of that determination without identifying any alleged errors. Therefore, the Court assumes that plaintiff's argument is that the Commissioner's decision is not supported by substantial evidence. Plaintiff has submitted additional evidence consisting of a note on a prescription form dated 6-22-04 stating that plaintiff "suffers from low back pain and bilateral lower extremity pain (radiculopathy) and was seen by [Dr. Renu Pokharna] in [the] Neurology Clinic today." *See* Plaintiff's Motion for Summary Judgment at unnumbered *In Globo* Exhibit. Additionally, plaintiff has appended a copy of shoulder exercises which were apparently prescribed on July 13, 2004 as physical therapy.

---

[11] ALJ Vanderhoof's Decision [Adm. Rec. 16].

This Court can only assume that the plaintiff's position is that the Commissioner's decision is not supported by substantial evidence.

## II. LAW

### A. Standard of Review

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence they must be affirmed. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, reweigh the evidence or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other

conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.

Despite this limited function, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990). A claimant, such as the plaintiff, is considered disabled only if her physical or mental impairment is so severe that she is unable to do not only her previous work, but cannot, considering her age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists or whether she would be hired if she applied for work. 42 U.S.C. § 1382(a)(3)(B).

### B. Entitlement to Benefits Under the Act

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 and Appendices, §§ 416.901 to 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in

any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

The five-step procedure for making a disability determination under the Social Security Act was restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001):

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 ( quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)).

The four elements of proof weighed in determining whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflict in the evidence." *Id.* In this case, the ALJ undertook the prescribed analysis and found, at step four, that plaintiff failed to satisfy

9

her burden of demonstrating that she is unable to perform her past relevant work as a cashier.

### III. ANALYSIS

The issue at this level of review is whether substantial evidence supports the ALJ's rejection of Plaintiff's subjective symptoms and complaints of *disabling* pain in light of the objective medical evidence. As the Commissioner aptly points out, the medical evidence of record is uncontroverted (*i.e.*, plaintiff's only restriction was from heavy lifting).[12] The triage nurse's notes dated October 7, 2002 state that Jones' chief complaint was left arm pain and relate a history of back/leg pain secondary to a fall in September.[13]

Outpatient Progress Notes dated September 30, 2003 indicate that Jones had complaints of right leg weakness, shooting pain from her hip to her foot once a week and "tingling" in her right leg/foot which "comes and goes."[14] The medical record further reflects that the plaintiff's medications consisted of Elavil and Bextra. It was further noted that plaintiff's straight leg raising test was negative with "CN II-XII intact," "gait [was] normal," and that she was "able to walk on heels and toes."[15] The MRI report dated August 27, 2003 states:

> IMPRESSION:
> There is evidence of significant disc space narrowing at the L5/S1 disc space.
> The end plates appear sclerotic at the L5/S1 level.
> There is mild anterior osteophytosis of the L5 vertebral body.
> There is no evidence of fracture or dislocation.

---

[12]*See* MCOLNO Emergency Department Sign-Out Sheet dated October 7, 2002 (noting the diagnosis of lumbar disc disease and activity restriction of no heavy lifting) [Adm. Rec. 104].

[13]*Id.* [Adm. Rec. 103].

[14]*See* MCOLNO Outpatient Department Progress Notes dated September 30, 2003 [Adm. Rec. 109].

[15]*Id.*

> The paravertebral soft tissues are unremarkable.
> Incidental note is made of surgical clips in the right upper quadrant which suggests possible previous cholecystectomy.
> Mild to moderate degenerative disc disease and degenerative joint disease of the lumbosacral spine as described above.[16]

Earlier notes dated May 14, 2003 state that Jones presented with complaints of low back pain and leg weakness. It was further noted that her back pain was exacerbated by bending and twisting. Jones' straight leg raising test yielded negative results.[17] At that time, plaintiff's current medication consisted of Flexeril; upon discharge, Jones was prescribed Flexeril together with Darvocet as needed for pain.[18]

Plaintiff's chief complaint is *disabling* pain symptoms. The law requires that the ALJ make affirmative findings regarding a claimant's subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)(*citing Sharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981)). When a plaintiff alleges disability resulting from pain, she must establish a medically determinable impairment that is capable of producing *disabling* pain. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1999) (*citing* 20 C.F.R. § 404.1529). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *See id.* It is well-settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference. *See*

---

[16]*See* MCOLNO's Department of Radiology Final MRI Report dated August 27, 2003 [Adm. Rec. 113].

[17]*See* MCOLNO's Emergency Department Physician's Patient Record dated May 14, 2003 [Adm. Rec. 116].

[18]*See id.*; MCOLNO Emergency Department Sign-Out Sheet dated May 14, 2003 [Adm. Rec. 118].

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Scott v. Shalala*, 30 F.3d 33, 35 n. 2 (5th Cir. 1994); *Falco*, 27 F.3d at 164; *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). The Fifth Circuit recognizes that "the ALJ is best positioned" to make these determinations because of the opportunity to observe the claimant first-hand. *Falco*, 27 F.3d at 164.

As a routine part of the administrative process in an appeal from a denial of disability benefits, the ALJ must review and assess the subjective comments of the claimant. This process requires the ALJ to assess the individual claimant's credibility related to claims of disability. An assessment of the individual's credibility must be based upon the entire record, including medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions and statements/reports from the individual, treating or examining sources, and other persons with information about effects of plaintiff's symptoms. SSR 96-7p If medically determinable impairments are identified, the ALJ must assess the "intensity, persistence, and limiting effects of the individual's symptoms" to determine the extent of plaintiff's limitations. *Id.* When making this assessment, the ALJ must consider several factors in addition to the objective medical evidence, to wit: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medications that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factor concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.*

As a matter of law, the mere fact that working may cause a claimant pain or discomfort does not warrant finding of disability. Rather, it must be determined whether substantial evidence indicates that a claimant can work despite experiencing some pain and discomfort. *See Chambliss*, 269 F.3d at 522.

The ALJ applied the aforesaid guidelines to the evidence presented in Jones' case and his findings in this regard are reiterated above.[19] The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994). As to a determination of whether the plaintiff's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to induce the pain alleged. Medical factors which indicate disabling pain include: limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling and muscle spasms.

Here, the ALJ reviewed plaintiff's pain complaints and found that the record evidence failed to support a finding of *disability* due to pain. The ALJ also highlighted medical evidence indicating that plaintiff had a normal gait, negative straight leg raising tests, and that there was an absence of any sensory/reflex deficits. As to restriction from activity, the ALJ specifically noted that the only restriction placed upon Jones' activity by her physicians involved heavy lifting. The ALJ further highlighted the fact that, although plaintiff testified that she must lie down three times a day for 1 to 2 hours at a time, the medical record does not corroborate any such restriction imposed by her back symptomotology. Moreover, the ALJ fully and adequate

---

[19]*See* Note 11, *supra*, and accompanying text.

13

discussed the medical evidence and the plaintiff does not argue otherwise.

The Court does not doubt that Jones suffers from pain secondary to degenerative disc/joint disease at L5-S1; however, the record evidence viewed as a whole does not support a finding that said pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. The medical evidence presented does not corroborate the plaintiff's self-imposed restriction of resting supine three times a day for a period of approximately one to two hours each time. As the ALJ noted, Plaintiff's physicians imposed no such restriction. Indeed, lying down is contraindicated. The medical record affirmatively states: "lying down on back illicits 10/10 (*i.e.*, pain that registers ten on a ten scale)."[20] ALJ Vanderhoof acknowledged Plaintiff's complaints of pain and gave them some weight in making his determination, but found that Jones was not precluded from performing her past relevant work as a cashier as it generally performed across the country.

Credibility determinations and conflicts in the evidence are properly resolved by the ALJ. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). This Court finds that there is substantial evidence to support the ALJ's conclusion that Jones' allegations of *disabling* pain should not be fully credited.

As to extra-record evidence, which post-dates the Appeals Council's decision, the following standard applies: The Court may remand a matter to the Commissioner to consider new evidence "only upon a showing that there is new evidence which is material and that there is

---

[20]MCOLNO Orthopedic Out-Patient Progress Notes dated August 27, 2003 [Adm. Rec. 112].

good cause for the failure to incorporate such evidence into the record in a prior proceeding."[21] To justify a remand, the evidence must satisfy three criteria. The evidence must be both new and not merely cumulative of the evidence already in the record.[22] The evidence must also be material.[23] In other words, the evidence must be "relevant, probative, and likely to have changed the outcome of the Secretary's determination."[24]

The doctor's note and shoulder exercise instructions submitted as an *in globo* exhibit to plaintiff's motion for summary judgment merely indicate that Plaintiff continues to be treated for low back pain with radiculopathy. Such extra-record evidence is cumulative and thus unlikely to change the outcome of the Secretary's determination. Accordingly, remand for the purpose of considering such evidence is not warranted in this case.

## IV. CONCLUSION

As aforestated, this Court's function on appeal is limited to a determination of whether the ALJ's findings are supported by substantial evidence. Substantial evidence of record, considered in light of the applicable legal standards, supports the Commissioner's decision that Jones is not disabled within the meaning of the Act. Accordingly,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion for Summary Judgment be GRANTED and that the plaintiff's case be DISMISSED WITH PREJUDICE.

---

[21] 42 U.S.C. § 405(g).

[22] *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir.1989).

[23] *See id.*

[24] *Id.*

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 22 day of August, 2005.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE